IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

LYLE M. HEYWARD #A252-187, Lee Pool #A201-141,
Darrick E. Newsome Jr. #A676-232, Michael Daugherty #A669-891,
Victor Cooper #A576-625, Larry Lewis Jr. #A515-117,
Mark White #A196-752, Ronald Stewart #A505-252,
Clarence Gholson #A306-527, Mathew May #A305-482,
Jamie Daniels #A732-092, Holden Williams #A156-142,
Donte Lawhorn #A669-300, Kenneth Hill #A553-178,
and all other Prisoners at AOCI; et al.;
*(Pro Se, With Request For Appointment Of Attorney)*
         *Plaintiff's*

3:19cv02499
JUDGE CARR
MAG. JUDGE KNEPP

Case No. _____

V.

HEATHER COOPER, Chris Lambert, J. Haviland,
Joanna Factor, C. Foster, Cori Smith, Allison Gibson,
K. Riehle, C. Ester, P. Engles, Ibrahim Abdulrahim Al-Hagg,
B. Guise, D. Szabados, M. Ladesma, J. Casey,
Amy Marburger, Dr. B. Potts, K. Basinger, M. Giddens,
I. L. Collier, Mike Davis, Allysa Damschroder, K. Ludwig,
K. Myers, M. Christen, *et al.*;
*(In Their Individual Capacities)*
         *Defendants*

FILED OCT 25 2019 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF OHIO TOLEDO

---

CLASS ACTION COMPLAINT
WITH JURY DEMAND
AND REQUEST FOR APPOINTMENT OF ATTORNEY

---

**INTRODUCTION**

This is a *Civil Rights Class Action*, with Jury demand and request for the appointment of an attorney, filed by all Plaintiff's, cited in above caption, State Prisoners, for Damages *($2.5 Billion)*, Injunctive Relief, and Declaratory Judgment, under 42 U.S.C. § 1983, alleging several *Class Action Count(s)* and *Individual Count(s)* of:

a) Retaliation *(including but not limited to; the writing of false Conduct Reports, and conspiratorially planned disciplinary actions)*, for exercising Constitutionally protected conduct in violation of the 1st and 14th *Amendments of the U.S. Constitution*,

b) Falsification of Official Records, and the use of the same in a Constitutionally affective manner, including denial of Due Process, and theft of and obstruction of U.S. Postal Mails,

c) Religious Discrimination and unconstitutionally placing a burden on the free exercise of religion in violation of the 1st and 14th *Amendments*, and the *Religious Land Use and Institutionalized Persons Act (RLUIPA)*, and violation of the *Establishment of Religion Clause of the 1st Amendment*, and

d) Denial of Equal Protection Rights of the 1st and 14th *Amendments of the U.S. Constitution*, and

e) The use of four-man (4-man) cells at the Allen Oakwood Correctional Institution (AOCI) as punishment/sanction *(i.e. "Loss Of Cell Seniority")* in violation of the 1st, 8th, and 14th *Amendments of the U.S. Constitution, and*

f) *(NOT the doctrine of "Respondeat Superior")*, but the **Failure To Properly Train, Deliberate Indifference and Acquiescence/Implicit Authorization of the same by the ODRC Deputy Director, the ODRC Religious Services Administrator, AOCI Warden, the AOCI Deputy Wardens and supervisors including the AOCI Inspector of Institutional Services (IIS), and the ODRC Asst. Chief IIS.**

g) Violation of the Ohio Valentine Act, and the Sherman Antitrust Act

## JURISDICTION

1. This Court has jurisdiction over the Plaintiff's claims of violations of Federal Constitutional Rights under *42 U.S.C. §§ 1331(I)* and *1343*.

## PARTIES

2. The ***Plaintiff's,***, as named in above caption, are and/or were incarcerated at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during the events described/relevant in this Complaint.

3. Defendant ***Chris Lambert*** (hereto, Lambert), the *ODRC Deputy Director*, during all times relevant to this Complaint, at the Operational Support Center (Central Office), 4545 Fisher Road, Suite D, Columbus 43228.

4. Defendant ***J. Haviland*** (hereto, Haviland), is the *Warden of AOCI* during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802.

5. Defendant ***Joanna Factor*** (hereto, Factor), is the *AOCI Deputy Warden of Administration/Warden's Assistant/Correctional Warden's Assistant* and designee for direct appeals of Rules Infraction Board (RIB) decisions during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802.

6. Defendant ***C. Foster*** (hereto, Foster), is the *AOCI Deputy Warden of Operations* (DWO) during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802.

7. Defendant ***C. Smith*** (hereto Smith), is the *AOCI Deputy Warden of Special Services* (DWSS) during all times relevant to this Complaint.

8. Defendant ***K. Riehle*** (hereto, Riehle), is one of the *Assistant Chief IIS*, during all times relevant to this Complaint, at the Operational Support Center (Central Office), 4545 Fisher Road, Suite D, Columbus 43228.

9. Defendant ***Allison Gibson*** (hereto, Gibson), is the *AOCI Inspector of Institutional Services* (IIS) during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802.

10. Defendant ***Mike Davis*** (hereto, Davis), is the *Religious Services Administrator* for all of the ODRC's prisons, during all times relevant to this Complaint, at the Operational Support Center (Central Office), 4545 Fisher Road, Suite D, Columbus 43228.

11. Defendant ***P. Engles*** (hereto, Engles), is the *AOCI Chaplain*, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

12. Defendant ***Ibrahim Abdulrahim Al-Hagg*** (hereto, Al-Hagg), is a privately contracted *Imaam* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, and/or Toledo Masjid Al-Islam 722 East Bancroft Street, Toledo, Ohio 43608, and is under the

direct supervision of Defendant P. Engles, during all times relevant to this Complaint.

13. Defendant *C. Ester* (hereto, Ester), is the *AOCI Unit Management Administrator/Chief*, and Inmate Group Coordinator (IGC) during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802.

14. Defendant *I. L. Collier* (hereto, Collier), Is a *Unit Manager* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

15. Defendant *M. Giddens* (hereto, Giddens), is *Correctional Counselor/ Sgt.* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

16. Defendant *B. Guise* (hereto, Guise), is a *Secretary* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, and the *Staff Advisor* for The AOCI Cultural Awareness Inmate Group, during all times relevant to this Complaint.

17. Defendant *Dr. B. Potts* (hereto, Dr. Potts), is a *Psychology Supervisor* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

18. Defendant *K. Basinger* (hereto, Basinger), is a *Correctional Officer* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

19. Defendant *D. Szabados* (hereto, Szabados), is a *Lieutenant* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

20. Defendant *M. Ladesma* (hereto, Ladesma), in a *Lieutenant* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, and is the *Chairman for the AOCI Rules Infraction Board* (RIB), during all instances relevant to this Complaint.

21. Defendant *J. Casey* (hereto, Casey), is a *Case Manager* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, and sat as a RIB Panel Member during all times relevant to this Complaint.

22. Defendant *K. Ludwig* (hereto, Ludwig), Is a *Lieutenant* and the *Mailroom Supervisor* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

23. Defendant *M. Christen* (hereto, Christen), is the *AOCI Operational Compliance Manager* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

24. Defendant *K. Myers* (hereto, Myers), is the *Health & Safety Coordinator* at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

25. Defendant *Amy Marburger* (hereto, Marburger), is the *AOCI Dietitian* during all times relevant to this Complaint, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during the events described in this Complaint.

26. Defendant *Allysa Damschroder* (hereto, Damschroder), is a contracted worker for the Aramark Correctional Services, LLC, as *Administrative Assistant* in the Prisoner's Cafe'/Chow Hall/Kitchen, at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all times relevant to this Complaint.

27. Defendant *Heather Cooper* (hereto, Cooper), is a contracted worker for the Aramark Correctional Services, LLC, as *Food Service Director* at AOCI, and is responsible for overseeing and managing food

service operations at AOCI, including scheduling, inventorying, ordering, hiring, and delegating orders to Aramark staff and Prisoners, and development and coaching/training of Aramark staff and Prisoners, and also *sells* food (through *"Fresh Favorites"* and *"Inmate Groups"*), at the Allen Oakwood Correctional Institution (AOCI), 2338 North West Street (P. O. Box 4501), Lima, Ohio 45802, during all time relevant in this Complaint.

## FACTS

### 28. *First (1st) Class Action Count*

All of the Plaintiff's, as named in the above caption, exhausted administrative remedies (*i.e.* all three steps of *Administrative Code 5120-9-31*), complaining that During the entire thirty (30) day period, from approximately May 17th, 2018 until approx. June 17th, 2018, the *Holiest* observance for all Muslims globally, called Ramadan, Defendants Cooper, Smith, Engles, Al-Hagg, Marburger, Damschroder, Davis, and Factor (whom are *directly responsible for* and *directly involved in* the planning, implementation, and supervision of the Ramadan observance), *collectively conspired and individually endeavored* to deny Plaintiff's the equal opportunity to practice their religion as afforded to similarly situated Prisoners of other Religious Affiliations (i.e. Christianity, and Judaism, etc.), and placed an unlawful burden on the free exercise of their religion and the sincerely held religious beliefs of all Plaintiff's, cited above, and the specific *"Class"*, (i.e. *all other similarly classed prisoners at AOCI* whom are Classed/Classified as "Muslim/Islamic/Nuwaubian/N.O.I./ Sunni/Shi'ite/Ansaaru Allah, and/or Nubian-Islaamic-Hebrew" within their Religious Records), and/or who participated in Ramadan in 2018, namely:

a)
| | | |
|---|---|---|
| Yates #A735-120 | Byrd #A534-222 | Duale #A479-899 |
| Robinson #A391-788 | Wheeler #A526738 | Romantos #A241-508 |
| Holloway #A550-926 | Harris #A462-585 | Wood #A674-222 |
| Taylor #A354-209 | El-Amin #A505-287 | Johnson #A598-456 |
| Smith #A260-272 | Sizemore #A360-032 | Fuqua #A725-352 |
| Williams #A156-142 | Hall #A381-900 | Wilson #A603-483 |
| Cordova #A191-512 | Gray #A533-843 | Gittens #A264-080 |
| Ar-Araheem #A350-629 | Gatson #A687-297 | Smith #A446-655 |
| Allen #A620-533 | Brantley #A280-078 | Island III #A729-161 |
| Vicks #A270-096 | Mathews #R144-399 | Meadows #A388-175 |
| Davis #A301-650 | McKinney #A468-437 | Hakim #A629-588 |
| Morrar #A616-322 | Davis #A219-677 | Shabazz #A541-031 |
| Reed #A631-224 | Laws #A278-531 | Butler #A589-283 |
| Isom #A574-695 | James #A341-232 | Gayle #A703-728 |
| Summerville #A703-439 | Reynolds #A666-388 | |

The Defendants Cooper, Smith, Engles, Al-Hagg, Marburger, Damschroder, Davis, and Factor did so in the following manner;

b) Knowingly and systematically *blocking and denying Plaintiff's nearly every mandatory tenet* as it involves the preparation, facilitation and implementation of Ramadan as follows:

c) *It is a sincerely held mandatory tenet belief of Plaintiff's that the food which is prepared, specifically during Ramadan, is to be both prepared and served by Muslims only, and not non-Muslims*; (just as Prisoners at AOCI whom adhere to the *Buddhist* faith tradition as it relates to *Parinirvana* days of *Shusho-e, Nehan-e, Bodhi, and Hanamatsuri*, etc,... and the *Christian* faith tradition only a Christian can perform the Rite of *Communion*, etc., and in the *Judaic* faith tradition only Jews can prepare the food for *Rosh HaShanah, Yom Kippur*, and *Sukkot*, etc., and in the *Hindu* faith tradition it's the same for their observance of various *Ekadasi*). Although the Plaintiff's complained continuously, both verbally and in writing, Defendants Cooper, Smith, Engles, Al-Hagg, and Factor while allowing Prisoners of other faith groups to adhere to the mandatory tenets of their faith, as described above, knowingly and systematically allowed non-Muslims to prepare and

serve food during Ramadan (this also allowed for much of the food specifically set out for the Ramadan observance to be stolen by those inmates).

d) ***It is a sincerely held mandatory tenet belief of Plaintiff's that the Ramadan fast be broken congregationally at the time of Maghrib Salaat each and every day of Ramadan with Dates and Water as the Prophet Muhammad (ﷺ) instructed*** (just as Prisoners at AOCI of various other faith groups, such as but not limited to Catholics, 'Asatru/Wotonism, Anglo-Christians, Jehovah's Witnesses, and Jews have congregational prayers for the observances of various *Rites*, and even congregational *Benedictions* and prayers just prior to dismissal of parishioners after *Services*), Defendants Cooper, Smith, Engles, Al-Hagg, Davis, and Factor, while allowing other AOCI faith groups to adhere to the mandatory tenets of their faith, as cited above, knowingly and systematically, for the entirety of Ramadan, refused to allow the ***Mandatory Tenet*** requirements for the breaking of the Ramadan Fast, and never provided *Dates* for the entirety of Ramadan (Defendants had provided Dates on every previous year, and continues to provide additional religious and cultural/ethnic based foods, separate from the ODRC Cycle Menu, for other religious and cultural/ethnic *classed* groups, such as but not limited to ***Anglo-Christians*** (Kairos Accommodations, and Communion, and Aramark's contracted employees at AOCI purchase and prepare a special Christmas meal for the entire AOCI Prisoner populous regardless of Religious Affiliation, and it is standard operating procedure to shut down all normal operations with *"controlled movement on the yard"* at AOCI while this special meal is served for the Christian religious observance of *Christmas*, then there's Kairos Accommodations, and Communion Crackers & Juice); ***Jews*** (Kosher meals each and every day [Breakfast, Lunch & Dinner], Rosh HaShanah & Yom Kippur meals); ***Hispanics/Latinos*** (Hispanic Awareness Day Meal); and ***Secularly*** (i.e. Aramark contracted employees purchase special foods (i.e. Pizzas, Ice Cream, Ground Beef Hamburgers with sliced Tomatoes and Onions, Relish & Hamburger Buns, Hot Dogs/relish & Buns, and Assorted Flavored Soda Pops for Prisoners whom are assigned in the AOCI kitchen under the label ***Inmate Employee Appreciation Day***); ***Catholics***(Catholic Retreat; held every three [3] months)).

***It is a sincerely held mandatory tenet belief of Plaintiff's that each and every day of Ramadan begins with a specific Du'a (prayer), and must end congregationally with Maghrib Salaat and a specific Du'a:***

**Opening Du'a**: *"Nawaytu An Asuwma Yauwma Ghadaan Min Shabri Ramadaan Taa'atana Laka Fataqabbalahu Minniy Yaa Allah Innaka Anta Al Samiy' Al Aliym."*

*"I make intentions that I fast the morrow from the month of Ramadan, obligatory to you so except from me, o Allah, surely you are The Hearer and The Knower."*

**Closing Congregational Du'a**: In congregational Maghrib Salaat, ***Al Taraawiyh Salaat*** is performed. In it, the congregation remains in the *Sajdah* position after every fourth raka'aat, and at every second *Raka'aat* salutation is performed in *Sajdah*. Specific verses of the *Holy Qur'aan* are recited (for Muslims of the religion ***Nuwaubu*** this includes reading specific verses from *El Gadush Lohaat*), and *Dhikr* is performed until *Maghrib Salaat* is completed, and then the following closing *Du'a* is recited ***congregationally in unison***:

*"Allahuma Sumnaa Wa 'Ala Rizqika Aftarnaa, Fataqabbal Minaa, Innaka Anta Al Samiy'u Al 'Aliym."*

*" Oh Allah for Thee did <u>we</u> keep the fast, and upon thy provision have <u>we</u> broken it. So, accept it from <u>us</u>.*

*Surely you are The Hearer, The Knower."*

Immediately after this *Du'a*, all the Muslims must break their fast with the consumption of three (3) Dates, and Water, *as the Prophet Muhammad (ﷺ) instructed*. At that point each daily fast is officially broken, and all the Muslims are to eat their evening meal together/congregately. **Defendants Cooper, Smith, Engles, Al-Hagg, and Factor knowingly and systematically denied Plaintiff's this mandatory tenet during the entirety of Ramadan, while allowing similar religious *Rites*, as described above, for other Religious Faith Groups at AOCI.**

e) **Defendants Cooper, Smith, Engles, Al-Hagg, Marburger, Damschroder, Davis, and Factor knowingly and systematically denied Plaintiff's proper nutrition by only allowing Plaintiff's to receive between 750 – 1000 calories in total for each day, which included the *"Sahur"* Bags (Bagged Breakfast), during the month of Ramadan** (virtually subjecting them to starvation,... some Muslims losing up to and even more than 20 Lbs., during Ramadan. This was so egregious to some of the Plaintiff's that they had to quit observing Ramadan, due to getting ill from extreme hunger imposed on them by Defendants religiously bigoted agenda against Muslims). *Although Plaintiff's repeatedly complained, both verbally and in writing, that the proper portion sizes were not being followed/given, and that the proper temperatures for serving food was not being adhered to, etc.,* Defendants and their direct supervisors Defendants Gibson and Riehle, named above, knowingly and systematically insured that the food was put in and served on Styrofoam trays that are not even designed to hold the proper portion sizes, nor maintain proper food temperatures (e.g. Plaintiff's were called up to the main chow hall at varying times *[any time between 1830 Hrs. - 1730 Hrs. each day of Ramadan]*, to pick up the pre-made Styrofoam trays *[which had been sitting out on open air counters in the main kitchen for approximately an hour or longer]*, to pick up those trays to be carried back to their individual cells and be held in the open air environment of the cells until the time of **_Maghrib Salaat_** *[i.e. between approximately 8:50 PM – 9:15 PM]*, to break their fast individually). Further, In response to *Informal Complaint Resolutions* (ICR), Notification of Grievances(NOG), and Appeals of the same to the Chief IIS (Defendant Riehle), Defendants, and their direct supervisors, were deliberately indifferent, acquiesced/implicitly authorized and ratified the discriminatory treatment of the Plaintiff's, and the Muslim Class Community at AOCI as a whole, and would repeatedly lie about the Ramadan service/facilitation being *"closely monitored"* as a guise to cover up improper portion/serving sizes, etc. and to falsify official records and falsely make it appear in writing, that the menu as promulgated by an ODRC Ramadan Menu, was being followed; when in fact none of this was being done. Even in the face of the photographic record Plaintiff's kept (of each and every Ramadan food tray), and showed them to the Defendant's, they remained deliberately indifferent, and even became hostile (i.e. on one occasion, out of several, in an attempt to intimidate *("chill")* Plaintiff Heyward into not making any more complaints, he was threatened, by Defendant Foster; to be transferred out of AOCI to a higher security prison, with a trumped-up bad Conduct Report, in retaliation of his verbal and written complaints about how fantastically terrible the Ramadan food trays were, and literally showing the photographic record of it. Heyward, being an *"Old Law"* Prisoner took the threat very seriously, because it was the AOCI Deputy Warden of Operations who was making the threat, and filed ICR (*NOG #ACI-0618000221* – Plaintiff Heyward was prevented from filing an *Appeal* to the Chief IIS on this Grievance because the GTL Kiosk systems *'Communications'* function was not operational for three weeks during this time and by the time it was back up and running, the grievance had *'Timed Out'*); directly to the Warden, Defendant Haviland, about the incident,.. yet that too was met with deliberate indifference/acquiescence). *"Old Law"* Prisoners are subject to receiving additional prison time *(Flop Time)*, from the Parole Board, pursuant to *Administrative Code 5120:1-1-07*, for any Conduct Report received, no matter how far back in a Prisoners time of incarceration the event which gave rise for the Conduct Report occurred.

i) See also ***DRC Policy 60-FSM-02 § VI C (2)***, which states:

"All facilities *shall* follow the DRC cycle menu. The dietary operations

manager *shall* evaluate the cycle menu plan, with input from contract and/or departmental field staff, following the *USDA Dietary Guidelines for Healthy Americans 2010*. The dietary operations manager *shall* review the cycle menu annually to *ensure* that the DRC follows nationally recommended allowances for <u>*basic nutrition*</u>. The cycle menu *shall* take into account *all foods necessary to maintain proper nutritional health, based on recommended standards that have been established by the USDA Dietary Guidelines for Healthy Americans 2010*. This pre-planned schedule of meals is designed to *minimize repetition* and increase efficiency in areas of preparation, ordering, cost containment, and inventory." **[Emphasis Added]**

f) **Defendants Cooper, Smith, Engles, Al-Hagg, and Factor Knowingly and systematically allowed inmates to steal *the food designated for the Muslim observance of Ramadan*.** As directed by Defendant Cooper, the contracted Aramark *Food Service Coordinators*, whom were left to merely *watch* the Muslims pick-up the pre-made food trays did not have any authority nor ability to address and/or correct any of the problems repeatedly complained of verbally by Plaintiff's each and every day of Ramadan, and would state that *"Inmates must have stolen the food"*, as a response to all verbal complaints that were put forth by Plaintiff's on a daily basis. This also occurs during the final closing at the very end of the Ramadan observance, called *Iyd Ul-Fitr/Eid-Ul-Fitr*. This massive theft of food, and deliberate indifference of the Defendants towards the securing of food for religious purposes only occurs during Muslim religious observances, and not for/during any other religious observance for any other religious class/group at AOCI. Plaintiff's made complaints stating that for State employees DRC Policies and Institutional Rules in and of themselves are just a reference/guide and do not secure any particular Constitutional right or protection. However, the DRC Policies, *cited below*, reflect the *literal <u>Mandatory Tenets</u>* of the Plaintiff's, and demonstrates that all Defendants are fully aware of (and/or are expected to be), and were/are deliberately indifferent in their respect. Further, by the *mandatory predicated language* of State Statutory Law, **Ohio Revised Code § 9.06**, private companies and private contractors and volunteers etc. who work within Ohio's State prisons are <u>*required*</u> to uphold strict adherence to them. Thus, the Plaintiff's believe that the Defendant's deliberate, systematic and discriminatory based refusal to follow them violates their rights. However, all Defendants remained deliberately indifferent to those complaints during the entirety of the Ramadan observance. The Mandatory Tenets are delineated within DRC Policy as follows;

    i) *DRC Policy 72-REG-01.*
    ii) *The Religious Services Manual* (also known as, *"<u>The Chaplains' Manual</u>"*). *pages 149 – 178*.
    iii) *DRC Policy 72-REG-02.*
    iv) *DRC Policy 72-REG-12 § VI E (1) (a) through (f).*

29. Plaintiff's filed ICR's, NOG's, and Appeals of the same exhausting all administrative remedies *(Administrative Code 5120-9-31)*, for all causes of action, cited above. At each and every stage of exhaustion the Defendants were deliberately indifferent, acquiesced, implicitly authorized/ratified, gave preformed/*"boiler-plate responses"*, and outright lied about what was going on.

30. Once it was discovered by AOCI Defendants that it was Plaintiff Heyward who assisted all Plaintiff's in filing written complaints and exhausting administrative remedies for the same, an ongoing and continuous pattern of retaliation against Heyward ensued, for him making/filing complaints (both verbally and in writing), filing grievances, and Civil Actions, and further for assisting other Prisoners in doing the same. This just did not begin with the instances of this foregoing action, but is actually a continuing pattern(s) of retaliation against Heyward stemming from the instances currently being litigated in *The United State District Court, for the Northern District of Ohio, Western Division; Heyward v. Cooper, et. al., Case No. 3:16-CV-02774.*

*31.* Plaintiff Heyward is well known throughout AOCI as being a Prisoner who vigorously uses the Inmate Grievance Procedure (Administrative Code 5120-9-31), and pursuant to DRC Policy 59-LEG-01 assists many other Prisoners in doing the same on a myriad of subject matters, and as a direct result he is subjected to what appears to be subject to *perpetual retaliation,* from AOCI prison staff, for doing so. Because of this Plaintiff Heyward has had to exhaust administrative remedies through the Grievance Procedure varying in every area which ranges from conditions of confinement, false conduct reports, false and inflammatory information being injected into his institutional records, monies mysteriously disappearing off of his GTL Phone Tablet, abusive shakedowns, theft of his outgoing U.S. Mail (including mail sent out *Certified With Return Receipt*), assault, third party unprivileged slander, etc. etc.. Many retaliatory acts which have been occurring Heyward has tried to overlook, because although they're retaliatory they also could be easily construed as normal instances if incarceration... However, because Plaintiff Heyward is an *"Old Law"* Prisoner, there are others which he just cannot overlook, because the retaliatory acts are in fact *adverse actions* which can and will have a direct deleterious effect on Plaintiffs' *"consideration of __Suitability__ for parole"* by the Adult Parole Authority (Parole Board), in August 2019, pursuant to *Administrative Code 5120:1-1-07;* (the nature of Heyward's sentence will be negatively affected through *"Fop Time"*). This just did not begin with the instances of this foregoing action, but is actually a continuing pattern(s) of retaliation against Heyward specifically for filing complaints and grievances, stemming from the instances currently being litigated in ***The United State District Court, for the Northern District of Ohio, Western Division; Heyward v. Cooper, et. al., Case No. 3:16-CV-02774.*** These retaliatory acts are as follows:

    a) *1.* Plaintiff Heyward is one of the founders of the DRC Policy 73-GRP-01, DRC-4166-Form approved Inmate Group at AOCI known as *The AOCI Cultural Awareness Inmate Group* (CAA), along with a Prisoner named D. Rivers (Inst. #A265-097). Upon the inception of the CAA, Rivers was established as the President, and Heyward as 1st Vice President (Heyward also co-wrote the Constitution & Bylaws for the CCA), thus as one of its' founders Heyward has made an *immutably positive contribution* to not only any and all members and/or potential members, but also the entire AOCI general populous and staff.

    *2.* On Friday, November 17th, 2017, between the hours of 1440 – 1510 Hrs., Rivers came into the 3-A Housing Unit to collate and establish with Heyward various *'Rules of Operations'* for the very first *Inmate Group Fundraiser* scheduled for the CAA, as mandated by the *original CAA Constitution & Bylaws at __ARTICLE IV § III B__* pending at the time of this incident which states:
> *"...1(A) The 1st Vice President shall preside over fund raising activities in conjunction with the President.,...3. The 1st Vice President shall work with the President, and shall dutifully perform assignments delegated by the President."*

    *3.* Among many of those rules was that various Prisoner *Board Members* (i.e. President, Secretary, Treasurer, etc.), were to be assigned specific functions at specific stations of the *Fund Raiser* staging area, the OPI Shop & Adjacent Class Room. Heyward was assigned to the entrance door, with a specific mandate from the President to *"only allow five (5) Prisoners in the door at one time, so that we can monitor/control the traffic flow, and virtually eliminate any attempt at theft which plagues all other Inmate Group Fund Raisers."* During the Fund Raising food sale pick-up, several Correctional Officers concurred with that mandate (Officers Owens, Laws, and a Sgt. J. Schrider), and specifically gave Heyward *'Direct Orders'* to insure he carried it out.[1]

---

[1] All Prisoners who deliberately fail or refuse to abide by the *'Direct Orders'* given by Officers receive a bad Conduct Report for violating *Administrative Code 5120-9-06, Rule #21* (Disobeying a Direct Order), which results in a myriad

4. However, on this day other CAA Board Members (the CAA Secretary, CAA Reentry Chairman, & CAA Membership Chairman), had different designs to carry out their preplanned theft of various food items, by calling in multitudes of inmates, over the objections of Heyward, to create *'cover'* for the theft of items. At several points there were up to 45 inmates in the staging area all at once, making it impossible to control the activities of so many in the area at once... and as a direct result there was a massive amount of food items that were stolen,... art one point officer Owens was carrying a box filled with food orders that were to be transported to the 'Oakwood Camp',... he turned his head for a fraction of a second and the box was 'hit' by several inmates resulting in over twenty (20) sandwiches *'disappearing'*.

5. Due to rainy weather, there was a temporary 'shutdown' of all fundraising activities due to the institution going on temporary 'yard closed/controlled movement' status. Heyward, being 1st Vice President, took this a s an opportunity to bring this problem to the attention of the CAA President for resolution. While making his complaint known to the CAA President, Defendant Guise abruptly began yelling directly at Heyward at the top of her lungs in a 'mantra' type rapidity, *"Why is it always you!!?? Why is it always you!!?? I'm sick of your complaining!!! Why!!??"(i.e.* Heyward, who is well known as a Prisoner who vigorously uses the Grievance Procedure, had previously been filing complaints for what appeared to be the undue obstruction of various attempts of the CAA to show movies and other fundraising activities*).* Due to this *'Verbal Assault'* by Guise upon Heyward, he wrote a complaint and submitted it on ***December 4th, 2017*** to the Assistant Staff Advisor, Mr. Joseph, in an attempt to resolve this issue unofficially. In retaliation to this complaint/grievance Defendant Guise conspired with inmate D. Rivers (Inst. #A265-097), to convene a secret CAA meeting, without Heyward even knowing about it, and literally threatened the CAA members who attended that secret meeting, that *"If you don't vote Heyward out of this organization, I'm going to insure that this organization is shut down!!"* Thus, all attending members were coerced to vote Heyward out of the very organization he helped bring into existence. Heyward filed Grievance on this issue too, and various lies were formulated in POST HOC Pretextual Sham fashion, by Defendant Ester, and Gibson, acquiescing and implicitly authorizing the retaliation against Heyward.

b) *1.* On January 23rd, 2019, what began as a *Fire Drill* (at approx. 0715 Hrs.), for the entire 3-A and 3-B Housing Units at AOCI, morphed into a Urinalysis Testing for the entire cell block populous of the 3-A Housing Unit. It is Standard Operating Procedure (*i.e.* Customary Practice), at AOCI to literally cease all normal operations, having the entire Prisoner are not permitted to cross the yard without officer escort *to and from* any given destination), whenever Urinalysis Testing is being conducted.

2. All Prisoner being tested were denied every single Due process protection promulgated in **DRC Policy 70-RCV-02**, which is the direct cause of *false* positives literally being *assigned* to Prisoners from *random* Urine Testing Jars. Initially, when tested, Heyward was informed that he had tested *"Clean"* for any and all drugs,... the Test Jar that Heyward submitted urine in was immediately destroyed, on site, and Heyward was given a *direct order* to leave the Religious Services Building, and was escorted a crossed the yard back to the 3-A Housing Unit.

3. Approximately 30 – 40 minutes later, Heyward was informed by the 1st shift regular officer that he was wanted back up at the Religious Services Building, where upon Heyward was again escorted.

---

of adverse actions/punishments.

4. It was at this time that Defendant Szabados assigned a random cup to Heyward, and stated *"Heyward you tested positive for marijuana, do you want to send it out?";*... to which Heyward responded, *"This is crazy!! I don't do drugs at all, period!! And how could this be my cup when the one I pissed in was destroyed almost an hour ago?!?!?";*... Szabados responded, *"I don't know what happened Heyward,... I'm surprised as well,... I can tell you this though, we've actually confiscated batches of tobacco that was laced with just enough marijuana and/or Fentanyl to test positive, but it won't get you high,... so, if you smoke cigarettes that could be the cause. All I can do is send it out, so do you want to send it out?";*... (refusal at this point results in ***immediate punishment [adverse actions] being imposed,*** some of them up to six months [½ a year] at a time), such as but not limited to placement in the Restrictive Housing Unit (*i.e. "The Hole"* which always results in a massive loss of personal property); cell isolation, commissary restriction, phone restriction, loss of cell seniority (*i.e.* being moved *from* a two-man cell *to* a four-man cell); Email & Jpay Kiosk access restriction; raising of Institutional Security Classification; institutional transfer to higher security prison; loss of work assignment; restriction from participation in Inmate Groups and various institutional programs and activities, including recreation in the gym & weight room; permanent confiscation of Timberland Work Boots; etc.,(***in most cases these punishments are imposed all at once***),... Heyward responded, *"I don't need this kind of trouble, I go to the Parole Board in August... I don't have any choice but to send it out, even so, Due Process is not being adhered to here and this fake 'dirty' will cost in fact, the urine in that cup came out of my body?!? I'll pay for the test!!";*...Szabados responded, *"No, we don't do that.";*... at that point it was Defendant Szabados who wrote my name on the random cup, and had me initial a label to have it sent out. Also at this point an unknown officer blurted out *"We'll break you yet Heyward!!"* , after which many officers, including Szabados, laughed.

5. Plaintiff Heyward at this point agreed to have the random cup sent out to basically buy himself time to file complaints and point out to upper AOCI prison administration, and the Warden himself the massive amount of procedural errors which occurred during this whole process.
    *i)* Heyward then filed complaints not only for himself but also assisted sixteen (16) other Prisoners in doing the same; *some* are listed herein as follows:

    | | | |
    |---|---|---|
    | ***Rafik Mirmohamed*** | #A351-307 | RIB Case No. ACI-19-000638, |
    | ***Holden Williams*** | #A156-142 | RIB Case No. ACI-19-000724, |
    | ***David Tressler III*** | #A739-414 | RIB Case No. ACI-19-000647, |
    | ***Jason Bell*** | #A663-631 | RIB Case No. ACI-19-000645, |
    | ***Brad Picklesmier*** | #A713-906 | RIB Case No. ACI-19-000653, |
    | ***Jason Ray Cantrill*** | #A742-489 | RIB Case No. ACI-19-000643, |
    | ***Timothy L. Gaines II*** | #A739-157 | RIB Case No. ACI-19-000696. |

6. At the initial ICR stage of all seventeen (17) complaints, Defendant Szabados lied by claiming that there were *"no procedural errors"* at all. Thus, Heyward had to figure out how to bring the truth out, being that it was demonstrated that Szabados lacked true integrity. Thus Heyward, within each Notification of Grievance (NOG) literally explained within each complaint to the AOCI IIS, Defendant Gibson, exactly how to check and see that in fact Szabados was lying about there not being procedural errors. As a direct result, Defendant Gibson found so many procedural errors had occurred, in combination with complaints made by the Religious Services Department (*i.e.* about urine being found in the plants and garbage cans within the Religious Services Building from the testing that occurred on 1-23-2019, etc.), that Gibson made recommendations to the Warden that the AOCI Staff that were involved with the testing undergo *"Complacency Training"*, and further, had the entire AOCI Urine Testing Process moved from the Religious Services Building to the completely

empty Housing Unit-6 building, and further *"Granted"* all seventeen (17) Notification of Grievances on behalf of each Prisoner, stating the following *[in pertinent part]:*

> *"...Because **staff has no way to show** that you were positively identified on this date, policy compliance is questionable. As a result, this writer finds that your grievance is granted,... This writer also is recommending that review of any possible conduct report and/or disposition for you be reviewed."*
> **Grievance Disposition of Grievance No. ACI-0119000498**
> [Emphasis Added]

7. At this point any and all possible Disciplinary Action was supposed to be completely cancelled (*i.e.* "thrown out"). However, Defendants Szabados, Ladesma, and Factor, upon learning that it was Plaintiff Heyward who wrote all the Grievances on the matter, conspired together, and in retaliation of him doing so imposed a conspiratorially planned and executed disciplinary action upon Heyward (and all other Prisoners caught up in the 1-23-2019 testing), by first systematically forcing the disciplinary action forward,... meaning that the official lie in attempt to cover this up is Defendants *POST HOC pretextual claim* that the findings and recommendation of the AOCI IIS in all NOG Dispositions were made *AFTER* the Conduct Reports were written and submitted into the Disciplinary Computer System, and therefore, the IIS has no authority to halt or impede on a disciplinary action that is already in progress;... when the truth is that the Grievance Disposition(s) were made *prior* to any Conduct Reports being put into the Computer Disciplinary System,... being that *ALL* urine samples that were sent out for further testing did not come back from *LabCorp* until *AFTER* the Grievance Disposition(s) were made, and therefore it was/is not possible to include *within the body of a Conduct Report* the findings of *LabCorp* until *after* they're returned. All Conduct Reports, including that of Heyward, *included within the body of them* the findings of the additional *LabCorp* Testing, proving that the findings of the IIS came *BEFORE* any of the Conduct Reports were submitted into the Disciplinary System and therefore should have been thrown out. Yet, in a retaliatory based and conspiratorial fashion all conduct reports were submitted to the AOCI RIB (through the Hearing Officer, Defendant Giddens, who was ordered to *"Move forward on all Conduct Reports"* by Defendant Factor),... the RIB Chairman literally sent a threat and warning back to the AOCI 3-A Housing Unit that the RIB Chairman intended *"find you all guilty no matter what"*, further that *"there's no way I'm going to let any of you off on a technicality"*, where upon the RIB Chairman, Defendant Ladesma, carried out the retaliatory based and conspiratorially planned disciplinary action as he threatened he would, finding Heyward and all others, *guilty*, and imposing all punishments/adverse actions, cited above at ¶ 27 b) 4, simultaneously. Plaintiff Heyward also filed NOG about the fact that he was charged $29.25 for *an RIB Conviction of the fallacious Rule 39 violation*, on March 5th, 2019, a full ten (10) days *BEFORE* Heyward even went to RIB, further proving/showing the conspiratorially/perfunctory nature of the entire RIB proceeding *(Direct NOG-0419000020, and NOG #ACI-0419000013*

8. Upon *Direct Appeal to the Warden* of this conspiratorially planned and executed disciplinary action, Defendant Factor, who was/is directly involved in the planning of this conspiratorial action, acts in direct conflict of interest and serves as the Administrative Review Officer/Warden's Designee for these Direct Appeals, including Heyward's, utterly acquiescing and ignoring the prejudicial procedural Due Process violations and affirming the RIB finding of *'Guilt'*. Defendant Haviland directly involved himself in this when on 3-28-2019, he signed the Warden's Decision On Appeal, and with deliberate indifference ignored Plaintiff Heyward's (an *'Old Law'* Prisoner) right of further appeal (called a *'Review of the Warden's Decision by the*

*Director'*) in violation of *Administrative Code 5120-9-08 § (N), (M), (O)(3), (P)(1), (Q)(1 thru 6), and DRC Policy 56-DSC-01 § VI (I)(1) & (2)*.

9. The effort to cover-up this retaliatory based/ conspiratorially planned disciplinary action did not stop there, but continued to spread to other AOCI Departments. Plaintiff discovered that even the *Appeals/Reviews* sent via U.S. Postal Mail, to the ODRC Director for additional review, which were clearly labeled on the envelope as 'legal mail', were being obstructed, diverted, and stolen out of the U.S. Postal Mail by the AOCI Inmate Mail Room Administrator/Supervisor, Defendant K. Ludwig, in violation of *Title 18 U.S.C. §'s 1701, 1702, 1703, 1708, 1709, & 1710*. Thus, on *April 4th, 2019* Plaintiff Heyward attempted to have his additional *Appeal/Review* heard by sending it directly to the ODRC Director, A. Chambers-Smith, through <u>***U.S. Postal Certified Mail with Return Receipt***</u>, for which he was charged *$6.40*. Yet, even that too was stolen out of the U.S. Postal Service process, in violation of the above cited Federal Statutes, of which Heyward paid for;...*first*, the Return Receipt was *NOT* signed by the ODRC Director (but rather someone named *Clemons*, on *5-19-2019*);... *second*, the very embossed envelope Heyward mailed out, including all the original contents, were returned to Heyward, *opened*, and with a Xerox type copy of a non-descriptive memo attached (that attachment was not sent out by Heyward, but returned as an addition to all the original documents Heyward mailed out); nothing was signed by anyone, not even the attachment. The only post mark dated *April 26th, 2019* on the original embossed envelope was/is the *Lima Ohio* registration number for the very mail machine in the AOCI Inmate Mail Room (*i.e.* #0000361260),... no other *Postmark Cancellation* was on it. Heyward exhausted administrative remedies on this too, *(Notification of Grievance [NOG] #ACI-0519000083, #ACI-0519000165, #ACI-0519000244)*.

10. While this was going on the retaliation against Heyward for filing complaints and grievances, and assisting others in doing the same, continued to spread and grow. Plaintiff Heyward filed *multiple* NOG's about the various forms of retaliation against him, and on several unconstitutional *Customary Practices* at AOCI, namely:

    *i)* The Use of 4-man Cells as Punishment in violation of ACA Standards, and the 8th Amendment rights of Heyward and all other Prisoners at AOCI. Defendant Haviland is directly responsible for the AOCI Policy which allows for the existence of Four-man Cells (4-man cells) at AOCI, and Defendants Haviland, Factor, Foster, Ester, Collier, Giddens and Ladesma are directly responsible for the <u>use</u> of the 4-man cells as punishment/sanctions (i.e. *loss of cell seniority*), at AOCI. Defendant Heyward exhausted administrative remedies on this subject through a Direct Grievance delineating the following facts:

       *a)* There are currently 40 such cells at AOCI housing 150 Prisoners for a total combined 9.6 cubic feet of *legitimately acquired and possessed inmate personal property* (personal property), 2.4 cubic feet of personal property for each Prisoner. In addition, there are personal property item which have been excluded from the 2.4 property limitation (such as but not limited to Special Approved Religious Items, and religious Books/Materials, State issued bedding, TV's, Cassette Player/with cassettes, CD Players/with CD's, Jpay JP-5 Players, MP-3 Player, GTL Phone Tablet Panasonic and Super III Radios, Acoustic Guitars/with carrying case and components, Electric Guitars/with carrying case and components, Electric Bass/with carrying case and components, Electronic Keyboards/with carrying case and components, Digital TV Converter Boxes, Electric Typewriters/with Supplies and Components, Two 8" Floor Fans per Prisoner, Two pairs of Tennis Shoes per Prisoner, Work Boots Shower Shoes, House Shoes, Shower Robe, Metal Legal Locker Box, Legal

Materials and Related Supplies pursuant to 59-LEG-01, Etc., PLUS up to $100.00 per week of Commissary items, and an assortment of ODRC Sundry and Food Package Items, Cups and Bowls, etc., etc. ).

*b)* Without any of these items in the cell, as listed above, there's not even twenty-five (25) Square Feet of *unencumbered space*. There's only one toilet, one sink and a VERY small vent which blows fungus spores/ *'Black Dust'* 24 hours a day. Prisoners assigned to these cells must literally pile in on top of each other with less than approximately 2.3 square feet or less of *total* unencumbered space. Plaintiff Heyward has collected many affidavits from a myriad of Prisoners at AOCI regarding this issue. *(NOG #ACI-0419000020 , #ACI-0319000193, #ACI-0319000194, #ACI-0319000198)*

*ii)* Health & Safety Issues Concerning Broke Down Wall Lockers, Poor Ventilation System In The Cells Which Perpetually Blows Animal, Insect & Bird Dander (Fungi Spoors In The Form Of *Black Dust*) Into The Cell Causing A Myriad Of Ear, Throat And Eye Infections, and Respiratory Problems, *(NOG #ACI-0319000199, #ACI-0319000404).*

*iii)* Violations of Bed safety regulations in cells *(NOG #ACI-0419000249).*

*iv)* Retaliatory removal of chair from cell resulting in personal injury. Heyward was seen by the AOCI Medical Dept.'s *CNP, Niese*, by 'pass' on May 15th, 2019 at 1430 Hrs. concerning this injury, and other medical issues which lead to a follow-up from the Eye Doctor where Heyward made specific complaint about his eye-lids painfully swelling up and developing Styes from the *'Black Dust'* fungi constantly being blown through the ventilation system in the cells. *(NOG #ACI-0419000239).*

*v)* Health & Safety Issues Concerning extremely rusted jagged edges and Broke Down Wall Lockers, broken drawers and metal parts hanging off of them *(NOG #ACI-04119000253).*

*vi)* False Information Being Injected/Inserted Into Heyward's Institutional Records, through DRC-3031-Forms, Institutional Adjustment Reports (i.e. it is falsely stated in Heyward's institutional records that he is serving a prison term of *'Indefinite Life/Until Death'*, with a code of *777.77*,... it also falsely states that Heyward was involved in *'Drive By Shootings'*, and several other fantastically false things which serve as *'enhancements'* that adversely affect his *'risk assessment Suitability for parole'* , and negatively affecting many areas of his conditions of confinement. (NOG *# ACI-0818000405).*

*vii)* The use of some of that same false information to deny Heyward his request for *Reintegration Transfer* to Grafton Correctional Institution (*i.e.* It was stated falsely that Heyward is doing *'Indefinite Life and therefore ineligible'* by Defendant Ester, as reason for denial), *(NOG #ACI-0219000414).*

*viii)* Defendants Haviland, and Ester, and Cooper are directly responsible for the illegal monopoly that exist at AOCI in violation of the *Ohio Valentine Act*, the *Sherman Anti-Trust Act*, the *mandatory predicated language* of State Statutory Law, **Ohio Revised Code § 9.06**, (private companies and private contractors and volunteers etc. who work within Ohio's State prisons are <u>required</u> to uphold strict adherence to DRC Policies and Administrative Codes, particularly as the relate to the treatment of Prisoners), and the Constitutional Rights of all Prisoners housed at AOCI, wherein through a systematic and deliberate scheme of;

*a)* Degrading the quality and palatability of food, and the minimum standards of nutritional value of the food being served,

    *b)* Diminishing quantities of food portion sizes (ranging from extreme water dilution of the food, to mixing of a starch-powder based and/or soy bean and or oatmeal (or all three) in various foods, to literal small serving scoops [*i.e.* ice cream scoops which are designed for frozen foods and not various cooked foods, to not using serving utensils at all]) and,

    *c)* The *permanent elimination* of whole-protein items (which has been replaced with the incomplete-protein of *Lagoons* (*i.e.* Black Beans, Navy Beans, or Bate Beans, *which are served on a daily regimented basis causing 'menu fatigue'*), and various other food items (all under the guise of rotated *Seasonal Menus*), such as but not limited to:

        *1)* Turkey bacon, *ground beef,* baked cod fish, *tuna fish*, roast beef, *whole chicken*, beef hamburgers, *salmon nuggets*, vegetarian nuggets, *hamburger buns*, hot dog buns, *jello*, pudding, *ice* cream, *fried potatoes* (including hash browns), various soups, *breakfast toast*, spinach, *cherry crisp*, apple crisp, *apricots*, fruit cocktail, *varying flavors of Kool-Aid*, baked Cod Fish., *sweet corn*, cream corn, *green Lima bean*, cantelope, *Raisin & Carrot Salad*, varying breakfast juices *(i.e. Orange Juice, Grapefruit Juice, Cranberry Juice, Apple Juice)*, cucumber salad, *and more.*

    All of these food items which have been eliminated from the general populations *Cycle Menu* are then *sold* to the Prisoner general population through an illegal *under the table* agreement(s) which are the direct result of the *Hostile Takeover* of all **ODRC Policy 73-GRP-01 Inmate Group** fund raising activities (such as but not limited to the *AOCI Vietnam Veterans of America Association*, the *AOCI Red Cross Association*, the *AOCI Gravel Club Association*, the *AOCI Cultural Awareness Association, etc.*), by a combination of Aramark's contracted employees and ODRC employees at AOCI. Resulting in monopolistic *price fixing/gouging*, and *Deceptive Sales And Product Practices* in violation of **Ohio Revised Code § 1345.02,** the **Ohio Valentine Act,** and the ***Sherman Antitrust Act,*** and the ***U.S. Constitutional Rights*** of Heyward, and all other Prisoners housed at AOCI.
***(NOG #ACI-0419000020, #ACI-0419000080, #ACI-0419000449).***

*ix)* As a direct result of Plaintiff Heyward's good faith use of the Grievance Procedure more retaliation ensued. On *May 2nd, 2019*, Heyward entered the AOCI Mental Heath Services Building (an *"Open Door"* policy department), and immediately went directly to the officers' desk, and spoke directly to the officer, Defendant Basinger, and stated *"I do not have a pass, but I'm here to inquire about some program that has been initiated by Dr. Potts. I've been filing A LOT of PREA Complaints for several Prisoners that are a part of the LGBTQ Community. And I was asked by one of them to come up here for 'emotional support'. I don't know anything about it, so I need to speak to Dr. Potts to see how I can attend"*. Basinger responded, *"Go to room 5"*. Heyward did not know where room 5 was, so he had to look door to door until he found room 5. Initially upon entering room 5 Dr. Potts was not present, nor was the Prisoner *(Michael D. Cole,* a transgender female whom identifies as *Michelle, #A752-142),* who invited Heyward to attend. Thus, Heyward immediately

left room 5 and returned to Defendant Basinger, and ask permission to *"<u>Go to the AOCI 2-A Housing Unit to get Cole. Because if she's not here then there's no reason for me to be here. Plus I want to be able to explain to Dr. Potts as to why I'm here?</u>"*. Basinger responded, *"<u>You're good Heyward, go ahead.</u>"* Heyward did so, and returned with Cole, both going directly to officer Basinger, whom again direct them to, *"<u>Go to room 5</u>"*. Upon entering room 5, Dr. Potts was immediately hostile/vituperative towards Heyward; yelling, *"What are <u>YOU</u> doing in here!?! Who do you think you are,... their advocate or attorney!?!!"*. Before Heyward could form a complete sentence in response, Dr. Potts yelled, *"You're disrupting my program!! Go out to the hall way if you want to say something!!"*. Heyward did so and with both hands up stated, *"I don't want any trouble Dr. Potts."*,... Potts responded, *"Why are <u>you</u> here,... do you think you're their attorney or something!?!!"*,... Heyward responded, *"No,... I'm not anybody's attorney. I merely assisted several Prisoners, mainly Cole here, in filing Prison Rape Elimination Act (PREA) Complaints. Both Cole and I heard that this program was initiated, at least in part, due to the Complaints being filed, and Cole asked me a week ago to come up for 'Emotional Support', that's all. So, I was trying to ask you as to how we could attend the program, or even if it was possible?"*; (see also **PREA Complaints** filed by Heyward on behalf of inmates *Jason Ray Cantrill*, a transgender/intersex female who identifies as *Carissa, #A242-489, PREA Complaints #ACI-0519000363, & #ACI-0519000163, and inmate Cole, #A752-142, PREA Complaints #ACI-0319000451, ACI-0319000452, ACI-0319000453, ACI-0319000459, ACI-0419000053, ACI-0419000107, ACI-0419000113, ACI-0419000124, ACI-0519000319, ACI-0519000405)*, Dr. Potts then explained that each person of the LGBTQ Community who wants to is assigned a *'Liaison'*, and must request through their assigned liaison to attend the program, where upon a meeting is scheduled to review the compatibility of the requester. Heyward then stated, *"OK, That eliminates me, I'm not LGBTQ nor do I have an assigned Mental Health Care assigned liaison,... again Dr. Potts, I'm sorry if you got upset, officer Basinger told me to go into room 5,... <u>clearly</u> you don't want me here, so I'll just leave"*. Dr. Potts responded *"Inmates acting as though their legal advocates and attorneys is a new one on me!"*;... to which Heyward did not respond. Without further incident both Heyward and Cole left and returned to their prospective Housing Units. All of this is preserved by camera footage, and Plaintiff Heyward specifically requested through NOG that this particular camera footage be preserved so that the Court could see that in fact he is not lying about anything.

    a) On *May 8th, 2019* Plaintiff Heyward was called into the office of Defendant Giddens (who is the acting *Hearing Officer*), and told that he had received a Conduct Report from Dr. Potts. The Conduct Report was/is retaliatory based and is deliberately misconstructed by Dr. Potts, and was/is in fact an utteral lie as it states:

> "On May 2nd at 1:19 pm, Inmate Heyward is observed on camera entering the mental health building, *scanning all the group rooms and entering group room 5. He returned again at 1:53 pm* [2], this time with inmate Cole A752-145. Together they entered group room 5, while a group was in session. *Neither individual was passed for this group and Heyward is not on the mental health caseload.* [3] I was

---

2  It was deliberately left out by Dr. Potts that the AOCI Mental Health Department is an *'Open Door'* policy Dept. and in fact Heyward *first* went to the officers' desk and was instructed by officer Basinger to enter room 5. Heyward had to look for room 5 because he didn't know where it was. Then got permission again from officer Basinger to leave and return with inmate Cole, this is clearly shown on the same camera footage Dr. Potts referred to in order to construct this fallacious retaliatory based Conduct Report.

3  Dr. Potts deliberately left out that passes are not required for this *'Open Door'* policy Department, and that the camera

running this group. I instructed them to leave, excused myself from the group to address them. *Mr. Heyward informed me he was representing or advocating for Mr. Cole to be in this group.*[4] *Mr. Cole stated he thought this group was designed specifically for him*[5] *and that it was a Trans group. I advised Mr. Haywood that his behavior was inappropriate. I informed Inmate Cole of the proper procedure for being referred to a group."*

*[Emphasis added for footnote references]*

b) During the Hearing Officer stage of this adverse action, Giddens began to automatically find Heyward *'guilty'* of the Conduct Report (ticket) without any consideration of Due Process. Heyward reminded Defendant Giddens that he is an *'Old Law'* Prisoner, and thus he can and will receive *'Flop Time'* because of this or *any* ticket, from the Parole Board (pursuant to *Administrative Code 5120:1-1-07*), and therefore the veracity of this Conduct Report must be established. Giddens was deliberately indifferent to this fact and refused to allow Heyward to call inmate Cole as a witness to what actually happened, and in fact took personal insult to the fact that Heyward expressed outrage that the Giddens would just find him guilty just because the ticket was written. Heyward then stated, *"officer Basinger is a witness to what actually happened. He's the actual 'security' at psych. Services, not only do you, but any and everybody else knows that this is a 'Open Door' policy department, so if I was actually 'out of place' don't you think he is the one who would have written a ticket on me? Check the camera Sgt., and you'll see for yourself that the ticket is a lie!"* Giddens responded *"Why are you coming all at me Heyward, I thought we were better than that?"*, Heyward responded, *"I'm not coming at you,... just because I express my outrage at the audacity of Dr. Potts to write such a lie has nothing to do with you,... it's a natural human response to such a thing."* Giddens responded, *"but I'm here now!"*, Heyward states, *"Come on Sgt., that's 'Reverse-Psycho-Babble-Emotional-Bull-Shit'. I can't accept the blame for something I didn't do, period,... but that's what you want me to do. Why don't you just check the camera?"* Giddens then lies by saying, *"I can't do that."*, Heyward responds, *"It's not that you can't, it's that you won't,... because you would have to get up and walk all the way to the Shift Captain's office, explain to the Captains, Lieutenants, and probably the Major as to why you need to review the cameras, and as soon as you mention my name you're going to catch hell."* Giddens then instructed Heyward to step out of the office to make a phone call. When called back into the office Giddens stated to Heyward *"Basinger says you did come to the desk first."* Heyward responded, *"so, why don't you collaborate that with the camera footage, thus showing that the entire basis for the ticket is false?"* That's when the Unit Manager, Defendant Collier, walked into Sgt. Giddens' office, and Heyward stated, *"I'm glad you're here, because as Unit Manager not only do you have the*

---

shows Heyward receiving instructions from officer Basinger whom was informed by Heyward that he did not have a pass, but was seeking information about a program being facilitated by Dr. Potts.

4  This is an absolute lie. Heyward has never promoted himself, nor at any time claimed to be anyone's advocate nor an attorney. It is Dr. Potts along with many other AOCI staff members who have a serious problem with any Prisoner who files complaints and grievances, and even moreso with any Prisoner, who in their mind, *dare* to assist other Prisoners to file them as well (which is allowed pursuant to *ODRC Policy 59-LEG-01*), as described herein at ¶ 32.

5  Inmate Cole is officially documented as a Transgender female. Cole's official Institutional Gender Classification, State I.D., Driver's License, Passport and Birth Certificate all state that Cole is female. Dr. Potts is fully aware of this, yet deliberately chose to refer to Cole as *'Mr.'*, *'he'*, and *'him'*,... which discloses Dr. Potts' discriminatorial state of mind.

> *authority to put a stop to this bogus ticket, but you also don't need "Shift Office' approval to review the cameras.* Collier stated, *"Oh this is about that ticket? I already know about it;... Dr. Potts was up at 'Shift' really 'going in' about how he thought you were trying to be somebody's attorney and 'When did <u>inmates</u> start being attorneys',... yeh, he was pretty upset."* Giddens stated to Collier, *"When did this happen?"*, Collier responded, *"I think it was either last week Friday, or maybe it was Monday."* To which Heyward stated, *"Well if it was Friday then you should throw the ticket out, being that it was written out side of the five day statute of limitations for writing tickets,.. notwithstanding the obvious, I know you're both pissed off at me for writing up all the stuff I've been writing up, especially all those bogus urine tests that were <u>supposed</u> to have been thrown out back in January,... evenso, now that you've officially become a part of this 'Hearing Officer Investigation', I'm officially requesting that you check the cameras and see what I'm saying is the truth, and please speak directly to officer Basinger too, who can also confirm what I'm saying."* To which both Giddens and Collier concurred that Basinger was *'Employee of the Month'* the previous month. At this time both Giddens and Collier instructed Heyward to leave the office. About thirty (30) minutes passed and again Heyward was called into Giddens' office and stated, *"Like I said Heyward, I spoke to Basinger, and you should be happy about that because most sergeants would not have done so,.. I still found you 'guilty' of the ticket though."* Heyward responded, *"How is that possible if you spoke to Basinger? I'm not a liar."* Giddens responded, *"Yeh, Basinger confirmed what you said,.. he told me that you did come to the desk first and it was him who told you to go to room 5. All I'm giving you is 7 days Cell Isolation."* Heyward responded, *"I don't care about the cell isolation,... I'm scheduled to see the Parole Board in August, and both you and Collier know going to catch flop-time for all this bogus stuff y'all have been branding me with, 'All Of A Sudden', since January."* Giddens responded, *"I wasn't up at the Chapel back in January."* Heyward responds, *"True that,...but you're a part of <u>this</u> Unit Staff, and you're here now,... so, why'd you find me 'guilty' of an <u>obvious</u> lie?"* Giddens responded, *" Basinger also said that you told him that you were 'a <u>member</u> of the program'. We [6] found you 'guilty' based on that, because you weren't actually a part of the program."* Heyward responded, *"Sgt., why would you involve yourself in their schemes of retaliation? There's <u>no</u> <u>way</u> Basinger said that,... because if I had claimed I was already a 'member' of this program, then I would have had a '<u>pass</u>', and therefore I would not have had <u>any</u> reason to stop at the officers desk to ask questions in the first place.[7]*

c) As shown by the Hearing Officer's Report (DRC-4020-Form), as **RIB Case No. ACI-19-001516**, Heyward properly requested and timely submitted his *appeal* (*via.* Through the Internal kite system), of this decision to the RIB Chairman, Defendant Ladesma, (known as a *'Chairman Of the Rules Infraction Board Review'* ). Evenso, in retaliation to Heyward's previous complaints [8] ,Defendant Ladesma, prejudicially denied Heyward his Due Process rights by falsely declaring that, *"You cannot appeal the decision from the Hearing Officer level."*, as the response to that appeal. Plaintiff Heyward

---

6 Meaning both Giddens and Collier

7 On *May 17th, 2019* at between approx. 1323 Hrs. - 1334 Hrs., Officer Basinger confirmed to Heyward, in front of Psych. Dept. staff witnesses, that he did <u>not</u> tell Giddens, nor Collier that Heyward claimed to be a *'member'* of the program at issue, and concluded that *"they must have gotten their wires of communication screwed up somehow".*

8 See herein at ¶ 31 b) 4 thru 7.

also exhausted the grievance Procedure remedies by filing Complaints on this issue, but was told by the AOCI IIS, and the Chief IIS that he could only file for a *RIB Chairman Review*, and thus could not use the Grievance procedure for this issue. Further, this shows how the retaliatory based deliberate indifference, implicit authorization and acquiescence of the direct supervisors and the IIS and Chief IIS (whom Heyward and others must rely upon to resolve complaint/Grievances submitted), work in tandem to deny Due Process *(NOG #ACI-0519000145, #ACI-0519000126, and #ACI-0519000119).*

    *x)* Both Defendant Gibson (the AOCI IIS), and Collier (an AOCI Unit Manager & former Captain), abruptly enter Plaintiff Heyward's punishment assigned 4-man cell, under the guise of inspecting the broken down and rusted wall locker and extremely crowded (and as Heyward complained), *'unconstitutional living conditions of the 4-man cells'*, but were actually there to harass, intimidate and threaten Heyward for filing so many complaints, and further attempted to 'Chill' Heyward from continuing to do so, and began berating and threatening Heyward (with adverse disciplinary action, restriction from using the *Administrative Code 5120-9-31* Grievance Procedure, and institutional transfer because of the multiple complaints and Grievances Heyward had filed, as cited herein. Defendant Gibson even engaged in *Third Party Unprivileged Slander* against Heyward by stating to other Prisoners in direct reference to Heyward that *"__He thinks he knows so much about the law and policy, but seriously, he's dumb as hell and lost his mind ,... do you think we actually read all the crazy stuff he writes,... he's crazy and needs mental help,... I don't see how you can cell with him.__"* The direct and implied threats and berating of Heyward continued for approximately 15 – 20 minutes, of which Heyward clearly perceived as a *'Set Up'* (*i.e.* an attempt to goad Heyward into some emotionally based reaction that would justify immediate disciplinary action against him). To this day the broken down wall lockers and other deplorably crowded conditions of the 4-man cells remain in the same messed-up condition(s) as before the so-called *'inspection'* carried out by Collier and Gibson. Heyward exhausted administrative remedies on this too, by filing a *Direct Grievance* on Defendant Gibson; *NOG #ACI-0519000164,* and *ACI-0519000165.*

    *a)* On this day Heyward also presented Defendant Gibson evidence of the theft and obstruction of his U.S. Mails for he had also filed complaints. Gibson was deliberately indifferent, and began to authorize the theft and obstruction of Heyward's mail by stating it was *"probably sent out through institutional HUB mail"*. Heyward responded by stating that *"what you call HUB mail is an inner-agency system which can only be used for that purpose. When a Prisoner purchases an embossed envelope and sends that mail out through the U.S. Postal Mail using that envelope, he has literally paid for it to go through the U.S. Postal Service, not an inner-agency alternate communication/mail service. This is even more true as it relates specifically to the Certified Mail with return receipt I also purchased and sent out, but was also stolen out of the mail specifically to prevent me from filing an appeal to that bogus RIB conviction on that urine testing that occurred on 1-23-2019"*. More berating of Heyward occurred from Gibson. Heyward exhausted administrative remedies concerning this too; see *NOG #ACI-0519000244.*

**32. *Supervisors And Those Of Policy Making Authority Who After Being Given Full Notice, Acquiesce and/or Implicitly Authorize The Unconstitutional Acts Of Their Subordinates.***

At no time in this Complaint are the Plaintiff's making a claim of *Respondeat Superior,* nor at any time are Plaintiff's complaining about the *'mere denial'* of Complaint(s)/Grievance(s). It is the office of the ODRC's *Chief IIS* who possesses the *'Final Decision(s)'* concerning a Prisoners filed Grievance upon its' *Appeal,* and the ODRC's office of *Deputy Director* as it concerns *Direct Grievances,* pursuant to *Administrative Code 5120-9-31.* Therefore, those decisions have *'the force of law'* as represented by the Municipality (*i.e.*

The ODRC itself), upon the Prisoner(s). In this case the *Assistant Chief IIS*, Defendant Riehle, as it concerns all Notification Of Grievances (NOG), and the ODRC *Deputy Director*, Defendant Lambert, as it relates to *Direct Grievances* Filed against any *Warden* and/or the *Inspector of Institutional Services* (IIS), in this instant case, with deliberate indifference wantonly ignored all the *prima facie* evidence presented to them through the Grievance Procedure by Plaintiffs, and in every instance rendered *'Form Letter/Boilerplate'* type responses/**Final Decisions** which not only acquiesced and implicitly authorized the unconstitutional acts of their subordinates (whereby emboldening them to continue in the same), but also were/are in clear opposition and defiantly contradicts the ODRC's written Policies, Administrative Codes, the Constitutional Rights of Plaintiffs and clearly established law. The same is true with the ODRC *Religious Services Administrator*, Defendant Davis, who literally issued Post-Order Inner-Office Communication/Memo, which not only was a *180°* reversal of long standing ODRC Policy (as issued by his predecessor, Gary Sims in Memo to *'All Chaplains'* dated *August 13, 2008*), specifically concerning the fair and equitable treatment of Muslims throughout ODRC's Institutions (especially during Ramadan and its' following Iyd's), but also upon its face allowed for the direct **Religious Class** discrimination specifically against all *'**Muslims**'* at AOCI, as described herein this Complaint.

## 33. *Exhaustion of Administrative Remedies*

Named Plaintiffs' have exhausted all Administrative Remedied (*i.e.* Administrative Code 5120-9-31, steps 1, 2, & 3), with respect to all claims and defendants.

## 34. **RELIEF REQUESTED**

   a) Jointly award **Compensatory Damages** of **$2.5 billion**.
   b) Award **Punitive Damages** of **$150,000.00**, against each Defendant, for each Plaintiff, for each perspective Constitutional violation.
   c) Issue **Declaratory Judgment** against each Defendant which states that the particular Defendant did violate the U.S Constitutional right(s) of Plaintiffs, individually and/or collectively.
   d) Have each Defendant found to have violated the Federal Criminal Statute *of Title 18 of the United States Code*, as it relates to the theft of U.S. Mails to be officially charged with said violation, and prosecuted to the fullest extent of the law.
   e) Issue **Injunctive Relief**, ordering Defendant(s) to cease in the particularized Constitutional violation(s), and order that the mandatory religious tenets of named Plaintiffs be adhered to by Defendant. Also order that the use of the 4-man cells at AOCI immediately cease, and that those cells be immediately converted to 2-man cells. Further order that all fundraising activities of Inmate Groups be restored ending the illegal monopoly now enjoyed by Aramark employees at AOCI.

DATE: 1⌀-16-2⌀19

Respectfully Submitted,

X_____

L. M. Heyward, et. al.     Pro Se
AOCI -------------- #A252-187
P.O. Box 4501
Lima, Ohio   45802