UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Lyle M. Heyward,                          Case No. 3:19-cv-2499

           Plaintiff,

     v.                                         MEMORANDUM OPINION
                                                   AND ORDER

Heather Cooper, *et al.*,

           Defendants.

### I. INTRODUCTION

Interested party the State of Ohio has filed a motion to dismiss the claims asserted by *pro se* Plaintiff Lyle Heyward against 23 named state employee Defendants ("Defendants"). (Doc. No. 21). Heyward did not file a brief in opposition to the motion to dismiss and the deadline for doing so has passed. Heyward has filed a motion for injunctive relief, alleging certain individuals (who are employed at the Marion Correctional Institution but not named as Defendants in this litigation) have confiscated his religious and legal documents, interfering with his ability to respond to Defendants' motion to dismiss. (Doc. No. 24). For the reasons stated below, I deny Heyward's motion and grant the State of Ohio's motion.

### II. BACKGROUND

Heyward filed a purported class-action § 1983 Complaint, naming 13 other inmates as Plaintiffs, and alleging various individuals employed by the Allen-Oakwood Correctional Institution ("AOCI") and the Ohio Department of Rehabilitation and Correction ("ODRC") have engaged in a

variety of actions which have violated the Plaintiffs' constitutional and civil rights, as well as the Sherman Anti-Trust Act and the Ohio Valentine Anti-Trust Act. (Doc. No. 1). He alleges Defendants: (1) retaliated against him for exercising his rights under the First and Fourteenth Amendments; (2) violated his due process rights; (3) discriminated against him on the basis of religion and infringed upon his free exercise rights, in violation of the First and Fourteenth Amendments and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"); (4) denied him equal protection of the law, in violation of the First and Fourteenth Amendments; (5) violated the First, Eighth, and Fourteenth Amendments through their use of four-person cells; (6) failed to properly train staff members; and (7) violated Ohio and federal anti-trust laws. (*Id.* at 1-2).

I previously ruled Heyward cannot assert claims on behalf of other inmates, whether named or as part of a class, while proceeding *pro se*. (Doc. No. 6). I also denied Heyward's motion to deem service had been perfected on all of the named Defendants and ordered him perfect service no later than November 20, 2020. (*Id.*). I granted Heyward's motion for an extension of that deadline until December 16, 2020, (Doc. No. 12), and Heyward subsequently filed certified mail receipts for 22 of the named Defendants. (Doc. No. 13-1). Heyward failed to submit proof he served copies of the Complaint and summons on Defendants Amy Marburger and K. Basinger, and I dismissed his claims against those Defendants without prejudice. (Doc. No. 14). I later granted a motion to dismiss filed by Defendants Heather Cooper and Allysa Damschroder, who were employees of Aramark Correctional Services, which provides food services at AOCI and other ODRC facilities. (Doc. No. 17).

The State of Ohio moves to dismiss Heyward's remaining claims on behalf of the remaining Defendants: Chris Lambert, J. Haviland, Joanna Factor, C. Foster, Cori Smith, Allison Gibson, K. Riehle, C. Ester, P. Engles, B. Guise, D. Szabados, M. Ladesma, J. Casey, Dr. B. Potts, M. Giddens,

I. L. Collier, Mike Davis, Ibrahim Abdulrahim Al-Hagg, K. Ludwig, K. Myers, and M. Christen. (Doc. No. 21).

The State of Ohio filed its motion on August 16, 2021. (Doc. No. 21). Heyward's brief in opposition therefore was due on September 15, 2021. *See* Local Rule 7.1(d) ("[E]ach party opposing a motion must serve and file a memorandum in opposition within thirty (30) days after service of any dispositive motion."). Heyward filed a motion for an extension of time to file his brief, (Doc. No. 23), which I granted, ordering Heyward to file his brief no later than November 30, 2021. (*See* non-document order dated September 21, 2021). Heyward did not file his brief in opposition to the motion to dismiss before the November 30, 2021, nor did he seek a second extension of the deadline.

## III. STANDARD

A defendant may seek to dismiss a plaintiff's complaint on the ground the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts as true well-pleaded factual allegations. *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Factual allegations must be sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Legal conclusions and unwarranted factual inferences are not entitled to a presumption of truth. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV. ANALYSIS

### A. MOTION FOR INJUNCTIVE RELIEF

As I noted above, Heyward did not file a response to the State's motion to dismiss. Instead, he filed a motion for injunctive relief, alleging Kasey Plank (the Inspector of Institutional Services at Marion Correctional Institution ("MCI")) failed to return religious and legal materials which other

MCI officers confiscated from him on May 6, 2021. (Doc. No. 24 at 1). According to Heyward, his legal materials were confiscated and not returned to him when he was transferred from MCI to North Central Correctional Complex in May 2021. (Doc. No. 24-1 at 1). He estimates he had accumulated around 10,500 pages of case law in 7 three-ring binders over the course of 10 years. (*Id.*). Heyward asserts he cannot respond to the State's motion to dismiss without these materials and will suffer irreparable injury if these materials are not returned. (Doc. No. 24 at 1). He also claims these materials were confiscated in retaliation for his exercise of his First Amendment right to file grievances against MCI staff members. (Doc. No. 24-1).

I deny Heyward's motion for two reasons. First, he does not explain why he cannot respond to the State's motion to dismiss without the legal materials he previously accumulated. He does not, for instance, assert he had no access to an institutional law library or to an electronic device through which he could perform legal research. It is conceivable, of course, Heyward may have had relevant legal materials within the 10,500 pages of caselaw he asserts he accumulated. (*Id.* at 1). But Heyward had 75 days in which to conduct research to support his opposition to the State's motion. The record contains no indication that he made any effort to do so.

Second, Heyward's motion asserts additional facts and a new claim for injunctive relief, which he contends he needs in order to defeat the State's motion to dismiss. But, if that is true, he has "a readily available tool: a motion to amend the complaint under Rule 15." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020) (citing Fed. R. Civ. P. 15(a)). Heyward "cannot, by contrast, amend [his] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates*, 958 F.3d at 483-84 (citing cases). Heyward did not file a motion to amend his Complaint or seek leave to do so. Therefore, I deny his motion on this basis as well.

B. **MOTION TO DISMISS**

The State of Ohio moves to dismiss each of Heyward's remaining claims. As I noted above, Heyward has not filed a response to the motion to dismiss. "A plaintiff must oppose a defendant's motion to dismiss or otherwise respond or he waives opposition to the motion." *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 875 (W.D. Mich. 2014) (citing *Humphrey v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) and *Scott v. State of Tenn.*, 878 F.2d 382 (6th Cir. 1989) (unpublished table decision)). I deem Heyward to have waived opposition to the State's motion to dismiss due to his failure to oppose that motion.

Though pleadings filed by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), Rule 12 requires Heyward to offer sufficient well-pleaded factual material. I conclude he has not and dismiss his claims for failure to state a plausible claim for relief.

1. **Retaliation**

Heyward alleges the Defendants retaliated against him for engaging in conduct protected by the First and Fourteenth Amendments, including through "the writing of false Conduct Reports, and conspiratorially planned disciplinary actions." (Doc. No. 1 at 1). To establish a First Amendment retaliation claim, Heyward must show: "(1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)) (alteration in *Hill*).

While an "inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf," inmates generally do not "have an independent right to help other

5

prisoners with their legal claims[,] . . . [unless] the inmate receiving the assistance would otherwise be unable to pursue legal redress." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Heyward's retaliation claim stems, in large part, from the assistance Heyward provided to other inmates, whether in relation to the institutional grievance system or civil litigation. For instance, Heyward alleges "[o]nce it was discovered by AOCI Defendants that it was Plaintiff Heyward who assisted all [Plaintiffs] in filing written complaints and exhausting administrative remedies [for alleged religious discrimination] . . . , an ongoing and continuous pattern of relation against Heyward ensued . . . ." (Doc. No. 1 at 7).

Heyward also alleges he is "well known" for assisting "many other Prisoners" with filing grievances "on a myriad of subject matters" and that "as a direct result[,] he is subjected to . . . perpetual retaliation[ ] from AOCI prison staff[ ] for doing so." (*Id.* at 8). Later in the Complaint, Heyward asserts he assisted 16 other inmates with filing grievances regarding alleged "procedural errors" in the institution's random drug testing program and, as a result, three named Defendants conspired to initiate disciplinary action against him. (*Id.* at 10-11).

There is no indication in the 19-page Complaint that any of the inmates Heyward assisted (some of whom are unnamed) "would otherwise be unable to pursue legal redress" without his assistance, as is required for Heyward's efforts on behalf of those inmates to constitute protected First Amendment conduct. *Herron*, 203 F.3d at 415. Therefore, Heyward fails to plausibly allege a retaliation claim based upon his assistance to other inmates. *See, e.g., Hermansen v. Ky. Dep't of Corr.*, 556 F. App'x 476, 477 (6th Cir. 2014), *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004), and *Vandiver v. Martin*, 48 F. App'x 517, 519-20 (6th Cir. 2002).

Moreover, to the extent the Complaint can be read to allege the Defendants retaliated against Heyward for filing grievances on his own behalf, his allegations that some of the Defendants engaged in a "continuing pattern[ ] of retaliation against Heyward" or acted "[i]n retaliation to

6

[Heyward's] complaint/grievance," (Doc. No. 1 at 8, 9), are conclusory and thus insufficient to state a plausible claim for relief. While the Complaint contains many allegations of adverse actions taken against Heyward, it contains only "[c]onclusory allegations of retaliatory motive." *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). *See also Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (affirming dismissal of plaintiff's retaliation claim as without merit where plaintiff's "claims rel[ied] solely on the assumption that because he filed grievances against the defendants and some time later they took actions against him, they had improper motives").

Therefore, I grant the State's motion to dismiss Heyward's retaliation claim.

### 2. Due Process

Next, Heyward claims the Defendants denied him due process by falsifying official records and obstructing his use of the mail. (Doc. No. 1 at 1). While the Complaint is not clear as to the scope of Heyward's due process claim, it appears he asserts his due process rights were violated when: (1) Defendant Szabados allegedly falsified a positive result on a random drug test for which Heyward provided a sample; (2) Defendant Ladesma found Heyward guilty of rule violations arising from the allegedly-falsified drug test; and (3) Defendant Ludwig allegedly removed Heyward's appeal of Ladesma's decision from the mail.[1] (*Id.* at 10-12). Heyward also alleges the Defendants violated his due process rights by inserting false information into his institutional records, which allegedly negatively affected his "risk assessment suitability for parole" and was used to deny his request to transfer to another institution. (*Id.* at 13).

### a. Disciplinary Proceedings

Heyward seeks compensatory and punitive damages, as well as a declaratory judgment in his favor, as to each of his constitutional claims. (*See* Doc. No. 1 at 19). Before an inmate may make a

---

[1] The import of this last allegation to Heyward's due process claim is not clear, as it appears Heyward concedes his notice of appeal was delivered to the Director of the ODRC, though it was not delivered in the manner in which Heyward intended it to be. (*See* Doc. No. 1 at 12).

claim for declaratory relief and money damages for harm allegedly suffered as the result of institutional disciplinary proceedings, the inmate must show the judgment issued during those proceedings has been overturned in the inmate's favor. *Edwards v. Balisok*, 520 U.S. 641, 645-48 (1997). If the judgment has not been overturned, and the inmate's § 1983 claim would necessarily imply the judgment rendered is invalid, the inmate's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 648 (An inmate's "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the decisionmaker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983.").

Heyward's allegations of misconduct during the drug-testing disciplinary proceedings necessarily imply the result of those proceedings is invalid. (*See* Doc. No. 1 at 11-12). Therefore, his due process claim is not cognizable on this basis.

        b.        **Parole and Transfer**

Heyward's parole- and transfer-related due process claims fall short as well. In order for due process protections to apply, Heyward must show he had a protected liberty or property interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972). Neither the Constitution nor Ohio law provides inmates with a liberty interest in parole. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) and *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991). Therefore, Heyward has no due process claim related to ODRC parole procedures. *See Michael v. Ghee*, 411 F. Supp. 2d 813, 817 (N.D. Ohio 2006) (citing *Brandon v. Dist. of Columbia Bd. of Parole*, 823 F.2d 644, 648 (D.C. Cir. 1987)).

Further, Heyward fails to show he had a liberty interest in being transferred to another institution. (*See* Doc. No. 1 at 13 (alleging false information was used to prevent Heyward from receiving a "Reintegration Transfer to Grafton Correctional Institution")). Just as inmates do not have "a liberty interest in avoiding transfer to more adverse conditions of confinement," *Wilkinson v.*

8

*Austin*, 545 U.S. 209, 221 (2005), they also do not have a liberty interest in being transferred to more favorable conditions of confinement. Therefore, Heyward does not have a due process claim arising from the procedures allegedly used to prevent his transfer.

### 3. Religious Discrimination

Heyward alleges Defendants Smith, Engles, Al-Hagg, Davis, and Factor, along with previously-dismissed Defendants Marburger, Cooper, and Damschroder, violated his religious free exercise rights under the First and Fourteenth Amendments and the RLUIPA. (Doc. No. 1 at 1-2, 4-7). Heyward first alleges those named Defendants violated his free exercise rights and the RLUIPA by: (1) serving food prepared by non-Muslims during Ramadan; (2) failing to provide dates for the breaking of the Ramadan fast; (3) prohibiting Muslims from eating their evening meal together; (4) providing only 750-1,000 calories per day during Ramadan; (5) allowing other "inmates to steal the food designated for the Muslim observance of Ramadan." (*Id.* at 4-7).

I previously addressed these claims in ruling upon Cooper and Damschroder's motion to dismiss:

> Inmates "have a constitutional right to be served meals that do not violate their sincerely-held religious beliefs[, b]ut there is no constitutional right for each prisoner to be served the specific foods he desires." *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010) and *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999)). The Sixth Circuit has repeatedly held inmates fail to state a First Amendment free exercise claim where the challenged prison policy does not force inmates to violate their religion. *See, e.g., Robinson*, 615 F. App'x at 314; *Spies*, 173 F.3d at 406-07; *Abdullah v. Fard*, 173 F.3d 854, at *1 (6th Cir. 1999) (unpublished table decision); *Abdur-Rahman v. Michigan Dep't of Corr.*, 65 F.3d 489, 491 (6th Cir. 1995).
>
> While Heyward may desire that the ODRC provide dates and arrange for Muslims to work in the cafeteria preparing meals for other Muslims, he does not allege he was forced to eat foods that he believes are impermissible or that he did not have other means of accessing the foods he desired to eat. *See Cloyd v. Dulin*, No. 3:12-cv-1088, 2012 WL 5955234, at *4 (M.D. Tenn. Nov. 30, 2012) ("[A]s long as a plaintiff is given an alternative to eating non-halal meat, he does not suffer a 'substantial burden' to his religious beliefs under the RLUIPA." (citing *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 810-12 & n.8 (8th Cir. 2008) and *Watkins v. Shabazz*, 180 F. App'x 733, 775 (9th Cir. 2006)).

> Heyward also fails to state a claim for relief against Cooper with respect to his assertion that it is a "mandatory tenet" of his faith that "all the Muslims are to eat their evening meal together . . . during the entirety of Ramadan . . . ." (Doc. No. 1 at 6). Heyward indicates the fast typically is broken between 8:50 p.m. and 9:15 p.m., while the cafeteria hours are between 5:30 p.m. and 6:30 p.m. (*Id.*). Heyward offers no facts to support the implication that Cooper (an employee of the food service contractor) plays any part in deciding where Muslim inmates may eat meals outside of the daily dining periods.
>
> Moreover, Heyward fails to state a claim with respect to his allegations concerning the caloric content of the meals offered during Ramadan because he does not allege he suffered any injury. While "prison administrators must provide an adequate diet without violating the inmate's religious dietary restrictions[,] . . . [i]f the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Colvin*, 605 F.3d at 290 (quoting *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002)). Heyward, on behalf of himself and a total of 57 other Muslim inmates, alleged "some Muslims [lost] up to and even more than 20 [pounds] during Ramadan . . . [and] some of the [Plaintiffs] . . . had to quit observing Ramadan, due to getting ill from extreme hunger imposed on them by Defendants . . . ." (Doc. No. 1 at 6). Heyward has not alleged he personally suffered harm and the less stringent pleading standards applied to pro se lawsuits do not require that I assume unpled factual allegations to be true. *See, e.g., Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).
>
> Nor does Heyward state a plausible claim through his assertion that a "massive theft of food . . . occurs during Muslim religious observations." (Doc. No. 1 at 7). Even accepting this allegation as true, *Daily Services*, 756 F.3d at 896, the Complaint contains no allegations which explain why the consumption by non-Muslim inmates of food compliant with the requirements of Islamic law creates an undue burden on Heyward's rights.

(Doc. No. 17 at 6-8).

Heyward's free exercise and RLUIPA claims against Smith, Engles, Al-Hagg, Davis, and Factor fail for the same reasons. In particular, it is worth noting that Heyward's allegations of misconduct are conclusory. (*See, e.g.,* Doc. No. 1 at 6 (Defendants "Smith, Engles, Al-Hagg, and Factor knowingly and systematically denied Plaintiff[ ] this mandatory tenet [of congregate meals] . . . while allowing similar religious Rites . . . for other Religious Faith Groups at AOCI.")). The Complaint does not contain any facts which demonstrate the named Defendants had any personal involvement in determining the selection of food provided by the institution or the times and places in which inmates may eat the food provided, as required under § 1983 and the RLUIPA. *See, e.g.,*

10

*Yaacov v. Mohr*, No. 1:16-cv-2171, 2021 WL 7286742, at *8 (N.D. Ohio Nov. 9, 2021) (citing cases), *report and recommendation adopted,* 2022 WL 556734, at *4-*5 (N.D. Ohio Feb. 24, 2022).

### 4. Equal Protection

Heyward alleges Defendants Smith, Engles, Al-Hagg, Davis, and Factor violated his equal protection rights by (1) not providing dates or allowing Muslims to break their daily fast together during Ramadan, and (2) allowing non-Muslim inmates to take food prepared for the observance of Ramadan. (Doc. No. 1 at 4-6).

I addressed Heyward's equal protection claim in my earlier opinion as well:

> A plaintiff who brings an Equal Protection claim under § 1983 "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000); *see also Abdullah*, 173 F.3d 854, at *2 (affirming dismissal of Muslim inmate's equal protection claim because inmate failed to show defendants' "behavior was motivated by purposeful discrimination").
>
> Heyward's allegations, taken as true, are insufficient to state an equal protection claim because he does not plausibly allege Cooper acted with discriminatory intent. While Heyward repeatedly alleges Muslim inmates were not permitted to observe Ramadan to the same extent as Christian and Jewish inmates (among others) were permitted to observe mandatory tenets on their faiths, he offers only the conclusory statements that these alleged differences were "discriminatory" and the result of "Defendants' religiously bigoted agenda against Muslims." (Doc. No. 1 at 6). The Complaint does not include "sufficient facts to allow an inference" that Cooper acted with a discriminatory purpose. *Dowdy-El v. Caruso*, No. 06-11765, 2012 WL 8170409, at *19 (E.D. Mich. July 24, 2012); *see also Robinson*, 615 F. App'x at 314-15 (affirming district court judgment in favor of defendants due to plaintiff's failure to allege the defendants acted with "intentional or purposeful discrimination").
>
> Heyward has not established "more than differential treatment alone," *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019), and, therefore, I conclude he fails to state an equal protection violation.

(Doc. No. 17 at 8-9).

For the same reasons, Heyward's conclusory allegations are insufficient to state a plausible claim for relief against Defendants Smith, Engles, Al-Hagg, Davis, and Factor. Therefore, I grant the State's motion to dismiss Heyward's equal protection claim.

### 5. Antitrust Claims

I also conclude Heyward fails to state a plausible antitrust claim. Heyward alleges Defendants Haviland and Ester, as well as Defendant Cooper, were "'directly responsible for the illegal [food service] monopoly that exist[ed] at AOCI' through 'degrading the quality and palatability of food,' 'diminishing quantities of food portion sizes,' and eliminating whole-protein items." (Doc. No. 17 at 9 (quoting Doc. No. 1 at 13-14)).

I previously rejected Heyward's antitrust claims against Cooper:

> Both federal and Ohio law prohibit agreements to restrain or monopolize trade and commerce. *See, e.g., Parker v. Brown*, 317 U.S. 341, 350 (1943) (The Sherman Act prohibits agreements to restrain or to monopolize "any part of the trade or commerce among the several States."); *Schweizer v. Riverside Methodist Hosps.*, 671 N.E.2d 312, 314 (Ohio Ct. App. 1996) (The Valentine Act, patterned on the Sherman Act, was "formulated to prevent monopolies, which, in general, means the concentration of business in the hands of a few or a combination for the purpose of raising or controlling prices." (citing *List v. Burley Tobacco Growers' Co-op Ass'n*, 151 N.E. 471, 477 (Ohio 1926)).
>
> The scope of these laws, however, is not unbounded. The limitation relevant here is the "state action" exemption: when "'the action complained of . . . was that of the State itself, the action is exempt from antitrust liability regardless of the State's motives in taking the action.'" *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 377-78 (1991) (quoting *Hoover v. Ronwin*, 466 U.S. 558, 579-80 (1984)); *see also Thaxton v. Medina City Bd. of Educ.*, 488 N.E.2d 136, 137 (1986) (holding the Valentine Act does not apply to governmental agencies "acting within their usual governmental capacity").
>
> The state action exemption applies to the matters of prison administration. *See, e.g., Jordan v. Mills*, 473 F. Supp. 13, 15 (E.D. Mich. 1979) (holding the state action exemption barred plaintiff's claim "regarding price fixing and other monopolistic activity . . . in [the] operation of the prison's inmate store"); *McGuire v. Ameritech Servs., Inc.*, 253 F. Supp. 2d 988, 1010 (S.D. Ohio 2003) (holding the state action exemption barred plaintiff's Sherman Act and Valentine Act claims for alleged antitrust violations in setting of prices for inmate-initiated telephone calls).
>
> Thus, Heyward's Sherman Act and Valentine Act claims are barred by the state action exemption and I dismiss his claims on that basis.

(Doc. No. 17 at 9-10).

Heyward's claims against Defendants Haviland and Ester fail for the same reason, and I grant the State's motion to dismiss those claims.

### 7. Cruel and Unusual Punishment

Heyward alleges AOCI assigns four inmates to a cell as a form of punishment and that the use of four-man cells constitutes cruel and unusual punishment. (Doc. No. 1 at 12). These allegations fail to state a plausible claim.

In order for a prison official to be held "liable under the Eighth Amendment for denying an inmate humane conditions of confinement," a plaintiff must show "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See also Robinson v. California*, 370 U.S. 660, 666-67 (1962) (holding the Eighth Amendment's cruel and unusual punishments clause applies to the states through the Fourteenth Amendment).

Heyward does not indicate in the Complaint how many inmates the cells at AOCI are designed to hold. But it is well settled that the number of inmates housed in a prison cell, without more, does not give rise to an Eighth Amendment violation. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981) (holding double celling does not violate the Eighth Amendment); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991) ("It is clear that double or triple celling of inmates is not *per se* unconstitutional."). And the Complaint does not contain any facts which might make the required showing that the four-man cells create a substantial risk of serious harm or that those conditions "resulted in an unconstitutional denial of such basic needs as good, shelter, or sanitation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). Heyward's four-man cell allegation is insufficient to state a plausible Eighth Amendment claim and, therefore, I grant the motion to dismiss this claim.

13

8. **Supervisory Liability**

Finally, Heyward alleges Defendants Lambert, Riehle, Gibson, and Davis violated his constitutional rights by "acquiesc[ing] and implicitly authoriz[ing] the unconstitutional acts of their subordinates . . . ." (Doc. No. 1 at 19). Because Heyward has not plausibly alleged any Defendant violated his constitutional rights, this claim fails as well.

## V. CONCLUSION

For the reasons stated above, I grant the motion of the State of Ohio to dismiss Heyward's claims against the remaining Defendants. (Doc. No. 21). Further, I deny Heyward's motion for injunctive relief. (Doc. No. 25). Finally, I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge